UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| JEAN RUSTICO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Defendant. | Case No. 18-CV-02213-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 43, 44 |

Plaintiffs Jean Rustico and John Rustico ("Plaintiffs") bring the instant lawsuit against Defendant Intuitive Surgical, Inc. ("Defendant"). Before the Court is Defendant's motion for summary judgment, ECF No. 43, and Plaintiffs' motion for partial summary judgment, ECF No. 44. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion for summary judgment. The Court DENIES Plaintiffs' motion for partial summary judgment.

## I.    BACKGROUND

### A.  Factual Background

Plaintiffs Jean Rustico and John Rustico ("Plaintiffs") are husband and wife. ECF No. 30

1

¶¶ 1–2.  Both Plaintiffs reside in Florida.  *Id.*  Defendant Intuitive Surgical, Inc. ("Defendant") is a Delaware corporation that is headquartered in California.  *Id.* ¶ 3.  Defendant manufactures and sells the robotic *da Vinci* surgical system, as well as electrosurgical equipment used in tandem with the *da Vinci* surgical system.  *Id.*

### *1.* **Jean Rustico's Surgery**

On January 12, 2012, Jean Rustico underwent a hysterectomy in order to remove an ovarian mass.  ECF No. 43-1 Ex. A ("Operative Report") at 1.  The hysterectomy was performed by Dr. Clare Zhou ("Dr. Zhou") at the Hospital of Central Connecticut.  *Id.*  Dr. Zhou used a *da Vinci* surgical system during the procedure, which included a "monopolar curved scissors" instrument with a tip cover accessory.  *Id.*; ECF No. 43 at 2.  The tip cover accessory served as insulation that was designed to prevent electricity from escaping from the *da Vinci* surgical system and injuring patients.  ECF No. 30 ¶ 19.

During the course of Jean Rustico's hysterectomy, Dr. Zhou noticed that the tip cover "on the monopolar scissors malfunctioned and leaked electricity onto the atherosclerotic aorta.  This created an adventitial injury about 3–5mm in size."  Operative Report at 4.  Dr. Zhou contacted Dr. Akella Sarma ("Dr. Sarma"), a vascular surgeon, who initially advised Dr. Zhou to suture the injury and continue with the procedure.  *Id.*  However, Dr. Zhou continued to note "brisk bleeding" "from the aortic injury."  *Id.*  Accordingly, "the decision was made to convert to laparotomy" and an open repair of the aortic injury, *id.* which required Dr. Sarma to intervene and manually repair the injury, *id.* at 7.  After Dr. Sarma repaired the aortic injury, Dr. Zhou completed the hysterectomy.  *Id.* at 4–5.

After Jean Rustico awoke, Dr. Zhou informed Plaintiffs that "there were complications from the robotic surgery during the surgery."  ECF No. 43-1 Ex. D at 33:25–34:1.  Dr. Zhou indicated that there had been damage done to Jean Rustico's aorta, and that the cause of the damage had been "the robotical [*sic*] equipment malfunctioning."  *Id.* at 34:10–11.  Specifically, Dr. Zhou told Jean Rustico that the *da Vinci* unit's "electrical component caus[ed] the damage."

*Id.* at 36:11–12. Jean Rustico's husband, John Rustico, was present for the discussion. *Id.* at 34:19–20. Jean Rustico did not ask Dr. Zhou why the surgical complication had occurred. *Id.* at 41:2–4. John Rustico testified that Dr. Zhou also separately explained to him that there had been "problems with the robot that led to Jean [Rustico]'s abdominal aorta being damaged," which had required Dr. Sarma's intervention. ECF No. 43-1 Ex. E at 21:2–3. John Rustico testified that Dr. Zhou had explained that there "was a burn that caused a hole in the aorta from malfunction of the robot." *Id.*

In a report that Dr. Zhou prepared on January 20, 2012, Dr. Zhou indicated that during the procedure on Jean Rustico, "the insulating sheath on the monopolar scissors malfunctioned and leaked electricity onto the atherosclerotic aorta." ECF No. 48-1 Ex. 16 at ECF 231. In the days following the surgery, Dr. Zhou also informed one of Defendant's employees that during the procedure, "she was seeing arching [*sic*] throughout the case, replaced the tip cover 3 times and it didnt [*sic*] fix the issue." *Id.* at ECF 223. Dr. Zhou testified that at some point after the surgery, Dr. Zhou "asked [Defendant], you know, are they going to make improvements to prevent this, and [Dr. Zhou] was under the understanding that something was going to be coming out." ECF 48-1 Ex. 13 at 56:8–10.

Jean Rustico was discharged from the hospital on January 16, 2012. ECF No. 43-1 Ex. D at 45:16–20. Notwithstanding the surgical complication, Jean Rustico was discharged in good condition. *Id.* at 46:5–7. Later, in September 2013, Jean Rustico witnessed a television advertisement and opted to contact an attorney to discuss a potential claim against Defendant. *Id.* at 41:22–25, 42:1–4.

### 2. The Tolling Agreement

On July 26, 2013, Defendant sent a proposed tolling agreement ("Tolling Agreement") to Plaintiffs' counsel. ECF No. 43-1 Ex. B ("Tolling Agreement"). The Tolling Agreement provided a framework for potential plaintiffs who sought to file "personal injury claims for monetary damages against [Defendant] involving the *da Vinci* Surgical System." *Id.* In particular,

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

the terms of the Tolling Agreement indicated that the Tolling Agreement would "toll the applicable statute of limitations for a three month period starting on the date [Defendant] is provided with a Claimant's name. If necessary, this period may be extended upon agreement of the parties." *Id.* The Tolling Agreement also stated in relevant part that "if a Claimant determines to file a lawsuit, any such lawsuit shall be filed in the Northern District of California only and only in the form of a single plaintiff family complaint." *Id.* The Tolling Agreement contained an express disclaimer: "The tolling of the applicable statute of limitations is not intended to and shall not for any purposed be deemed to limit or adversely affect any defense, other than a statute-of-limitations defense, that [Defendant] has, may have, or would have had in the absence of this agreement. Nor does this agreement waive or release any statute of limitations defense that could have been asserted before the date of the tolling period. Upon the completion of the tolling period, [Defendant] will have all defenses available to it as it had on the first day of the tolling period." *Id.*

On August 9, 2013, Plaintiffs' counsel returned an executed copy of the Tolling Agreement to Defendant. *Id.* Later, on February 3, 2014, Plaintiffs' counsel sent Defendant a list of names, which included Jean Rustico, "for the purposes of including these folks as of today's date in the Penton Law Firm tolling agreement." ECF No. 43-1 Ex. C. Although the record is unclear on the details, "[t]he parties subsequently extended the tolling agreement several times," and it appears that the instant claims "were continually tolled from February 3, 2014, until the filing of this lawsuit in April 2018." ECF No. 43 at 4.

**B. Procedural History**

On April 13, 2018, Plaintiffs filed an initial complaint in the Northern District of California, which alleged claims for (1) strict product liability as to a defect in construction, (2) strict product liability as to a defect in design, (3) strict product liability as to a defect in marketing, (4) negligence and negligence *per se*, (5) strict liability, (6) negligent misrepresentation and/or intentional misrepresentation, (7) fraud, and (8) loss of consortium. ECF No. 1 ¶¶ 106–

154.  Plaintiffs' claims alleged the existence in the *da Vita* surgical system of "insulation defects and/or surgical operational hazards that made [the *da Vinci* surgical system] more prone to causing electrosurgical injuries than open surgery."  *Id.*  Defendant answered Plaintiffs' initial complaint on May 24, 2018.  ECF No. 16.

On July 17, 2018, Plaintiffs' counsel filed a motion to consolidate the instant case with twenty-five other related cases against Defendant.  5:18-CV-02186-LHK, ECF No. 25-1.  On July 18, 2018, the Court granted the motion to consolidate, which thus consolidated the instant case with twenty-five other cases.  ECF No. 29.  For the purposes of efficiency, the Court instructed Plaintiffs' counsel and Defendant to each select one case each from the group of consolidated cases to litigate through dispositive motions and potentially into trial.  ECF No. 35 at 58:11–14, 59:12–14.  The Court set September 16, 2019, as the deadline for the selections.  5:18-CV-02186-LHK, ECF No. 102.

On November 26, 2018, Plaintiffs filed the First Amended Complaint ("FAC").  ECF No. 30 ("FAC").  The FAC added two additional claims against Defendant: a claim for breach of express warranty, and a claim for breach of implied warranty.  *Id.* at 42–45.  On December 5, 2018, Defendant answered the FAC.  ECF No. 33.

On September 16, 2019, Plaintiffs' counsel selected the instant case as their allotted choice to proceed to dispositive motions and potentially trial.  5:18-CV-02186-LHK, ECF No. 113.

Defendant filed the instant motion for summary judgment on October 4, 2019.  ECF No. 43 ("Mot.").  On October 30, 2019, Plaintiffs opposed the motion, ECF No. 48 ("Opp'n"), and on November 15, 2019, Defendant replied, ECF No. 51 ("Reply").

Concurrently, Plaintiffs filed the instant motion for partial summary judgment on October 4, 2019.  ECF No. 44.  Defendant opposed the motion on October 30, 2019, ECF No. 49, and Plaintiffs replied on November 15, 2019, ECF No. 52.

## II.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## III.    DISCUSSION

In Defendant's motion for summary judgment, Defendant argues that Plaintiffs' claims are all untimely. In order to resolve the issue of timeliness, the Court must first determine whether the California or Connecticut statute of limitations governs Plaintiffs' claims. As discussed below, the Court concludes that the California statute of limitations applies.

The Court then proceeds to consider in turn Plaintiffs' arguments that equitable estoppel, the Tolling Agreement, and the discovery rule and fraudulent concealment render Plaintiffs' claims timely under the California statute of limitations. The Court concludes that none of these arguments render Plaintiffs' claims timely. Further, because the Court concludes that Plaintiffs'

6

claims are untimely, the Court need not reach Plaintiffs' motion for partial summary judgment.

**A. The California Statute of Limitations Applies to Plaintiffs' Claims.**

The parties disagree about whether the California or Connecticut statute of limitations applies in the instant case. Defendant contends that California's two-year statute of limitations set forth by California Code of Civil Procedure § 335.1 governs all of Plaintiffs' claims. Mot. at 1. By contrast, Plaintiffs argue that Connecticut's three-year statute of limitations set forth by Connecticut General Statutes § 52-577a governs all of Plaintiffs' claims. Opp'n at 22. The Court agrees with Defendant. Plaintiffs' claims are properly governed by the two-year statute of limitations set forth by California Code of Civil Procedure § 335.1.

In diversity cases, courts perform the choice of law analysis of the state in which the courts sit. *See Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1506 (9th Cir. 1993) ("A district court in a diversity case must apply the law of the state in which it sits to a choice of law analysis."). The instant case is before the Court on diversity jurisdiction. Compl. ¶ 4. Accordingly, the Court must apply the choice of law analysis of California.

California uses the "governmental interest" framework to resolve choice of law issues. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006) ("Beginning with Chief Justice Traynor's seminal decision for this court in *Reich v. Purcell*, California has applied the so-called governmental interest analysis in resolving choice-of-law issues." (citation omitted)). The governmental interest approach involves three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

impaired if its policy were subordinated to the policy of the other state. *Id.* at 107–08 (internal citations omitted).

As noted, the instant case concerns an apparent conflict between statutes of limitations. The Ninth Circuit has explained that "[w]here the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law." *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003). This is "especially so where California's statute would bar a claim." *Id.* at 717. Thus, federal courts in comparable situations "consistently conclude that California's statute of limitations applies when faced with a choice-of-law concern[], absent a rare exception or extraordinary interest by a foreign state to keep alive the claims." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012). As discussed below, Plaintiffs fail to demonstrate that the instant case represents one of the "rare exceptions" in which the Connecticut statute of limitations, rather than the California statute of limitations, applies.

Under California's governmental interest analysis, the Court must first determine whether "the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Kearney*, 39 Cal. at 107. With respect to California law, "California Civil Procedure Code § 335.1 sets a two-year statute of limitations on personal injury claims based upon defective products, regardless of the particular legal theory invoked." *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 893 (N.D. Cal. 2013). Thus, because Plaintiffs' claims are all based on alleged defects in Defendant's *da Vinci* surgical system, the statute of limitations for each of Plaintiffs' claims is two years in length. Cal. Civ. Proc. Code § 335.1 (outlining two-year statute of limitations for "action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"); *see, e.g.*, *Zamudio-Soto v. Bayer Healthcare Pharma. Inc.*, No. 15-CV-00209-LHK, 2017 WL 386375, at *5 (N.D. Cal. Jan. 27, 2017) (applying two-year California statute of limitations to personal injuries related to defective product "for negligence, design defect, failure to warn, strict liability, breach of implied warranty, breach

1    of express warranty, negligent misrepresentation, fraudulent misrepresentation, fraud by

2    suppression and concealment, and loss of consortium"). By contrast, the applicable Connecticut

3    statute of limitations is three years in length. Conn. Gen. Stat. Ann. § 52-577a ("No product

4    liability claim . . . shall be brought but within three years from the date when the injury, death or

5    property damage is first sustained or discovered or in the exercise of reasonable care should have

6    been discovered . . . ."). Thus, the Court concludes that the laws of California and Connecticut

7    does indeed differ with respect to the applicable statute of limitations.[1]

8         Second, the Court must examine "each jurisdiction's interest in the application of its own

9    law under the circumstances of the particular case to determine whether a true conflict exists."

10   *Kearney*, 39 Cal. at 107. Under California law, "[s]tatutes of limitation are designed to protect the

11   enacting state's residents and courts from the burdens associated with the prosecution of stale

12   cases in which memories have faded and evidence has been lost." *Ashland Chem. Co. v.*

13   *Provence*, 129 Cal. App. 3d 790, 794 (1982). Thus, under California law, where "California is the

14   forum and the [only] defendant is a California resident," "California is the only interested state."

15   *Id.* The Ninth Circuit is in accord with this conclusion. In *Nelson v. Internat'l Paint Co.*, 716

16   F.2d 640, 644 (9th Cir. 1983), the Ninth Circuit stated: "The present case parallels *Ashland*, since

17   the forum is in California, and the only defendant is a California resident. Only California has an

18   interest in having its statute of limitations applied." *Cf. Ledesma v. Jack Stewart Produce, Inc.*,

19   816 F.2d 482, 485 (9th Cir. 1987) ("Unlike *Nelson*, this case involves California residents who are

20   plaintiffs, not defendants, thereby weakening the forum state's interest in applying its own statute

21   of limitations.").

22         In the instant case, California is the forum, and the sole defendant is a California resident.

23   Accordingly, "California's statute of limitations would [] advance its underlying policy. In choice

24

25

---

[1] Plaintiffs argue that notwithstanding the difference in statutes of limitations, "California law
26   would nonetheless garner the same result under the unique facts here" because of Plaintiffs'
alternative arguments that relate to the Tolling Agreement. Opp'n at 19. The Court addresses
27   these arguments *infra*.

9

28   Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

of law terms, California has an 'interest' in applying its law." *Id.* By contrast, Connecticut "has no interest in having its statute of limitations applied because here there are no [Connecticut] defendants and [Connecticut] is not the forum." *Id.*; *see also Nelson*, 716 F.2d at 644 ("The present case parallels *Ashland*, since the forum is in California, and the only defendant is a California resident. Only California has an interest in having its statute of limitations applied.").

Under the governmental interests approach, when only one forum has an interest in the application of a statute of limitations, the conflict is "false," and the Court need not proceed to the third step of the analysis. *See Ashland*, 129 Cal. App. 3d at 794 (explaining that case in California forum with California defendant represented "the very paradigm of the false conflict" (internal quotation marks omitted) (citing David F. Cavers, *Comments on* Reich v. Purcell, 15 UCLA L. Rev. 647 (1967)); *Nelson*, 716 F.2d at 644 (holding that because "the forum is in California, and the only defendant is a California resident," "the conflict between California and Alaska or Texas law is false"). The Court concludes that any conflict between California and Connecticut with respect to the application of statute of limitations in the instant case is "false," and the Court must apply California's two-year statute of limitations to Plaintiffs' claims. *See, e.g.*, *Ready 4 A Change, LLC v. Sourcis, Inc.*, No. 2:19-CV-143 WBS EFB, 2019 WL 2024587, at *3–4 (E.D. Cal. May 8, 2019) ("[T]he conflict between Minnesota and California statute of limitations law is false and the court need not go beyond the second step of the governmental interest test.").

Plaintiffs dispute the foregoing analysis. Plaintiffs claim that for several reasons, the Court must conclude that the Connecticut statute of limitations in fact applies. The Court considers Plaintiffs' arguments in turn.

First, Plaintiffs argue that one of the cases that determined that the California statute of limitations applied in a parallel situation to the instant case was flawed. Specifically, Plaintiffs maintain that *Sourcis*, 2019 WL 2024587, relied "on the outdated notion that statutes of limitations are considered procedural in nature." Opp'n at 17. Plaintiffs argue that the governmental interest framework represents the appropriate mode of analysis. *Id.* However,

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs simply mischaracterize *Sourcis*. In *Sourcis*, the Eastern District of California *explicitly relied on the governmental interest framework* to conclude that the California statute of limitations applied in parallel circumstances to the instant case. 2019 WL 2024587, at *2 ("Under the governmental interest analysis, a court engages in a three-step process to determine if another state's law governs an issue brought in a California court."). Contra Plaintiffs' assertions, nowhere did the *Sourcis* court rely on "the outdated notion that statutes of limitations are considered procedural in nature." Opp'n at 17. The *Sourcis* court relied on the governmental interest framework to reach the same result that the Court does in the instant case, under the same factual circumstances: the California statute of limitations applies.

Second, Plaintiffs heavily rely on a Supreme Court of California decision, *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010), which Plaintiffs argue controls the instant case. Plaintiffs are mistaken. *McCann* involved a plaintiff who was an Oklahoma resident, and that plaintiff was exposed to asbestos in an Oklahoma refinery, which was headquartered in New York. *Id.* at 74. Over 50 years later, the plaintiff brought suit against the manufacturer of the refinery. *Id.* By the time the plaintiff brought suit in *McCann*, the plaintiff had become a California resident. *Id.* at 74–75. The *McCann* court confronted the issue of whether the Oklahoma statute of limitations or the longer California statute of limitations applied to the plaintiff's claims. *Id.* at 88–89. The *McCann* court concluded that the Oklahoma statute of limitations applied, which rendered the plaintiff's claims untimely. *Id.* at 100–101.

Two aspects of *McCann* distinguish it from the instant case. First, and crucially, in *McCann*, there was no California defendant. This fact is significant because California has a stronger interest in applying California's statute of limitations when the sole defendant is a California resident. *Compare Ledesma*, 816 F.2d at 485 ("Unlike *Nelson*, this case involves California residents who are plaintiffs, not defendants, thereby weakening the forum state's interest in applying its own statute of limitations."), *with Nelson*, 716 F.2d at 645 ("The present case parallels *Ashland*, since the forum is in California, and the only defendant is a California

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

resident.  Only California has an interest in having its statute of limitations applied."); *see also France v. Lesko*, No. SACV 08-990-JVS (MLGx), 2009 WL 10699437, at *2 (C.D. Cal. Mar. 3, 2009) (holding that the case presented a "true conflict" because "this case involves a California resident who is a plaintiff, not a defendant").  Here, the sole defendant is a California resident, and the forum is California.  Accordingly, the instant case is distinct from *McCann*, and instead parallels *Ashland*, 129 Cal. App. 3d 790.  *See also Zwebner v. Coughlin*, No. 05CV1263 JAH(AJB), 2005 WL 8173330, at *5 (S.D. Cal. Oct. 12, 2005 ("This Court finds this case similar to the *Ashland* case, cited by defendant, in that this case involves Florida plaintiffs suing a California resident, thus, creating a 'false conflict.'").

Second, in *McCann*, the out-of-state statute of limitations was shorter than the one available under California law.  By contrast, in the instant case, the Connecticut statute of limitations is *longer* than California's statute of limitations.  *McCann* declared only that a "state ordinarily has an interest in having [a] policy of *limited liability* applied to out-of-state companies that conduct business in the state."  48 Cal. 4th at 91 (emphasis added).  *McCann* said nothing about a state's interest in *extending* out-of-state liability where it would otherwise be unavailable. *Carlton v. Hertz Corp.*, No. CV 12–07178 JGB (MRWx), 2013 WL 394894, at *3 (C.D. Cal. Jan. 28, 2013) ("Here, Plaintiff wishes to apply Florida's statute of limitations to extend Defendant's out-of-state liability, not to limit it.  Thus, *McCann* does not identify any interest Florida has in the application of its own law.").  The instant case is therefore distinct from *McCann* in this second respect as well.[2]

These distinctions are critical.  This is so because under California law, statutes of limitations "serve two purposes: (1) they protect state residents from the burden of defending cases

_____

[2] Plaintiffs muse that *Sourcis* reached a different conclusion from *McCann* because "*Sourcis* was a breach of contract case while *McCann* was a product case."  Opp'n at 18.  This distinction fails to reckon with the fact that other courts, including the Ninth Circuit, have deployed the same reasoning as the *Sourcis* court in the context of products liability cases.  *Nelson*, 716 F.2d at 645 (applying California statute of limitations in products liability case "since the forum is in California, and the only defendant is a California resident").

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

where 'memories have faded' and 'evidence has been lost' and (2) they protect the courts of the state from the need to process stale claims." *Sourcis*, 2019 WL 2024587, at *3 (citing *Ledesma*, 816 F.2d at 485). "Given these interests, the relevant inquiry focuses on the residence of defendants and the forum." *Id.* Thus, when "the forum is in California, and the only defendant is a California resident," "[o]nly California has an interest in having its statute of limitations applied." *Nelson*, 716 F.2d at 645.

Plaintiffs also cite *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000). *Aalmuhammed* represented a "rare exception" to the general rule that California "will dismiss a claim that is barred by its statute of limitations." *Deutsch*, 324 F.3d at 717 (internal quotation marks omitted). In *Aalmuhammed*, the Ninth Circuit confronted a situation in which *all* of the conduct related to the underlying claim occurred outside of California. 202 F.3d at 1236 ("All the services were performed in New York and in Egypt . . . ."). The instant case is far afield of *Aalmuhammed*. Indeed, according to Plaintiffs, Defendant "makes da Vinci robots in California"; Defendant "directs its operations out of California"; Defendant's "decision to use faulty insulation and other faulty components, accessories and instrumentation and the decision to not report information about the defective product were all made in California"; Defendant's "failure to identify the dangers inherent in its product occurred in California"; and Defendant's "promotional materials and advertisements all originate in California." FAC ¶¶ 166–170. Plaintiffs' claims are thus distinct from the claims the *Aalmuhammed* court considered.

The Court therefore concludes that under California's choice of law rules, the two-year California statute of limitations outlined by California Code of Civil Procedure § 335.1 governs all of Plaintiffs' claims. The record is clear that Jean Rustico's surgery occurred on January 12, 2012. Operative Report at 1. Under the ordinary rules of claim accrual in California law, the two-year statute of limitations expired on January 13, 2014. *See, e.g.*, *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999) ("The general rule for defining the accrual of a cause of action sets the date as the time when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and

United States District Court
Northern District of California

the consequent liability arises." (internal quotation marks and citation omitted)).

In light of the foregoing, Plaintiffs raise various arguments that equitable estoppel, the Tolling Agreement, and the discovery rule and fraudulent concealment provide exceptions that render Plaintiffs' claims timely under the California statute of limitations. The Court considers these arguments in turn, beginning with Plaintiffs' arguments related to equitable estoppel.

**B. Equitable Estoppel Does Not Apply to Plaintiffs' Claims.**

The Court first considers Plaintiffs' argument that equitable estoppel applies in the instant case. According to Plaintiffs, Plaintiffs relied on the Tolling Agreement to support the belief that Plaintiffs' claims would remain timely under the California statute of limitations. Opp'n at 8–9. Plaintiffs assert that this reliance estops Defendant from now invoking the California statute of limitations to bar Plaintiffs' claims. *Id.* Defendant responds that at the time Plaintiffs entered into the Tolling Agreement, Plaintiffs' claims were *already* untimely under the California statute of limitations. Reply at 3. Further, Defendant asserts that Plaintiffs fail to point to any acts undertaken by Defendant that in fact induced Plaintiffs' reliance. *Id.* The Court agrees with Defendant. Equitable estoppel does not apply in the instant case.

Under California law, a defendant may be equitably estopped from invoking a statute of limitations in certain circumstances. Equitable estoppel is "not a punitive notion, but rather a remedial judicial doctrine employed to insure fairness, prevent injustice, and do equity." *Leasequip, Inc. v. Dapeer*, 103 Cal. App. 4th 394, 403 (2002). In order for equitable estoppel to apply, four elements must be established: "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant for the true state of facts; and, (4) he must rely upon the conduct to his injury." *Id.* at 403–404 (internal quotation marks omitted). Under California law, "[r]eliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 655 (2003).

Where "the facts are undisputed and can support only one reasonable conclusion," the question of equitable estoppel may be resolved as a matter of law. *Windsor Pac. LLC v. Samwood Co., Inc.*, 213 Cal. App. 4th 263, 272 (2013). Moreover, of relevance to the instant case, "the law particularly disfavors estoppels where the party attempting to raise the estoppel is represented by an attorney at law." *Steinhart v. Cty. of Los Angeles*, 47 Cal. 4th 1298, 1316 (2010) (internal quotation marks and citation omitted). As the Supreme Court of California "long ago explained, one who acts with full knowledge of plain provisions of law and their probable effect on facts within his or her knowledge, especially where represented by counsel, may claim neither ignorance of the true facts nor detrimental reliance on the conduct of the person to be estopped, two of the essential elements of equitable estoppel." *Id.* In light of the foregoing, Plaintiffs' argument as to equitable estoppel fails for multiple independent reasons.

First of all, Plaintiffs' argument that Defendant is equitably estopped from invoking the California statute of limitations depends exclusively on the operation of the Tolling Agreement. According to Plaintiffs, Plaintiffs "refrained from instituting legal proceedings in Connecticut because they relied on the tolling agreement." Opp'n at 9. However, the record is clear that Jean Rustico did not become a party to the Tolling Agreement until February 3, 2014. Opp'n at 9. By February 3, 2014, Plaintiffs' claims were *already* untimely under the two-year California statute of limitations, which expired on January 13, 2014. *See supra* Section III.A. Thus, it is impossible to say that Defendant's "conduct [] induced another into forbearing suit *within the applicable limitations period*." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383 (2003) (internal quotation marks omitted) (emphasis added).

Plaintiffs attempt to rely on the fact that Plaintiffs' claims would have been timely under a three-year Connecticut statute of limitations. As an initial matter, the Court notes that Plaintiffs merely assume, without argument, that Connecticut would have in fact applied the three-year Connecticut statute of limitations in the event that Plaintiffs elected to file suit there. *But see Phillips v. Scott*, 446 F. Supp. 2d 70, 83 (D. Conn. 2006) (applying California statute of limitations

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  in diversity action). However, whether a lawsuit would have been timely under the Connecticut

2  statute of limitations is irrelevant because the two-year California statute of limitations, not the

3  three-year Connecticut statute of limitations, represents the "applicable limitations period" for

4  Plaintiffs' claims. *Lantzy*, 31 Cal. 4th at 383. California law is clear that the "doctrine of

5  equitable estoppel does not apply" when a defendant did not induce a delay in the filing of a

6  complaint "until the limitations period provided by the applicable statutes of limitation had

7  expired." *Berube v. Homesales, Inc.*, No. H041422, 2015 WL 5697655, at *5 (Cal. App. Sept. 25,

8  2015). That is the situation in the instant case. Jean Rustico did not become a party to the Tolling

9  Agreement until February 3, 2014, after Plaintiffs' claims had become untimely under the two-

10  year California statute of limitations, which expired on January 13, 2014. Thus, Defendant did not

11  induce any delay "until the limitations period provided by the applicable statute had expired." *Id.*

12  The doctrine of equitable estoppel is inapplicable.

13         Second, and in any event, Plaintiffs entirely fail to explain how Defendant's conduct

14  rendered Plaintiffs "ignorant" of any "true state of facts," as required for equitable estoppel to

15  apply. The affirmative acts that trigger equitable estoppel under California law "often take the

16  form of a promise on the part of the defendant concerning future performance." *Hauser v.

17  Josephthal & Co., Inc.*, No. B189843, 2007 WL 662469, at *2 (Cal. App. Mar. 6, 2007). In the

18  instant case, the record is devoid of evidence that Defendant made promises or affirmative

19  representations concerning the California statute of limitations. Instead, Defendant merely offered

20  to Plaintiffs the Tolling Agreement, which included a provision that dictated that "this agreement

21  [does not] waive or release any statute of limitations defense that could have been asserted before

22  the date of the tolling period." Tolling Agreement. When Plaintiffs chose to accept the Tolling

23  Agreement, Plaintiffs were "protected by an attorney, who is charged with knowledge of the law

24  in California as far as the statute of limitations is concerned even though he may practice in other

25  states." *Kunstman v. Mirizzi*, 234 Cal. App. 2d 753, 758 (1965); *see also Cal. Cigarette

26  Concessions, Inc. v. City of Los Angeles*, 53 Cal. 2d 865, 870 (1960) ("It must be presumed that

27

28        16

plaintiff's attorney knew of the charter provision that a claim was deemed rejected after 90 days, and knew that authority to approve or reject the claim was vested in the city council rather than the city clerk, who could merely make a recommendation."). Indeed, this knowledge is underscored by Plaintiffs' own complaints in the instant case, which specifically allege the application of California law, ECF No 1. ¶¶ 163–171, FAC ¶¶ 163–171, and Plaintiffs' pending motion for partial summary judgment, which extensively cites California tort law, ECF No. 44-1, *passim*. In light of the foregoing authority, there can be no doubt that Defendant's conduct did not render Plaintiffs "ignorant" of any "true state of facts"—*i.e.*, the existence and operation of the two-year California statute of limitations.

Third, Plaintiffs fail to show that Defendant intended that Defendant's conduct "be acted upon" by Plaintiffs such that equitable estoppel is now appropriate. The California Court of Appeal's decision in *Ashou v. Liberty Mutual Fire Ins. Co.*, 138 Cal. App. 4th 748 (2006), is on point. In *Ashou*, the California Court of Appeal considered a situation in which a plaintiff sought to equitably estop an insurer from invoking a statute of limitations because the insurer had agreed to reconsider the plaintiff's insurance claim. *Id.* at 767. However, in a letter to the plaintiff, the insurer also "*expressly stated* it would not waive defenses." *Id.* In light of this letter, the California Court of Appeal concluded that the plaintiff could not show that the insurer "intended its continued investigation of her claim to lull her into a false sense of security regarding the time bar." *Id.*

As with the letter in *Ashou*, the Tolling Agreement in the instant case "*expressly stated*" that Defendant "would not waive defenses." *Id.*; Tolling Agreement. Indeed, the Tolling Agreement specifically states as follows: "Nor does this agreement waive or release any statute of limitations defense that could have been asserted before the date of the tolling period." *Id.* In light of this express statement, Plaintiffs' assertions that Plaintiffs were "lulled [] into a false sense of security" by the Tolling Agreement are unreasonable as a matter of law. *Ashou*, 138 Cal. App. 4th at 767.

1    Plaintiffs assert that two documents demonstrate that Defendant "intended to toll the

2  claim[s] through the" Tolling Agreement. Opp'n at 1–2. Neither document makes any such

3  showing, however.[3] One document, which Plaintiffs merely indicate is "a true and correct copy of

4  [Defendant's] 'mediation program' documents," contains no information about Plaintiffs other

5  than the fact that Jean Rustico underwent surgery on January 12, 2012. ECF No. 47-6 Ex. 23 at

6  ECF 60. Moreover, the document refers to surgeries that occurred nearly a year after Jean Rustico

7  became a party to the Tolling Agreement and thus long after the applicable two-year California

8  statute of limitations had run. *E.g.*, *id.* at ECF 67. The second document, which Plaintiffs assert is

9  Defendant's "survey on the statute of limitations," is simply an undated 50-state survey that

10  concerns the differences in claim accrual rules across all state jurisdictions. ECF No. 47-6 Ex. 22.

11  This document contains no reference to either Plaintiff and bears no apparent relevance to

12  Plaintiffs' equitable estoppel argument.

13    Plaintiffs' cited cases demonstrate why equitable estoppel is inapposite in the instant case.

14  For instance, Plaintiffs cite *Universal Paragon Corp. v. Ingersoll-Rand Co.*, No. C05-03100 MJJ,

15  2007 WL 518828 (N.D. Cal. Feb. 13, 2007). *Universal Paragon Corp.* involved the disputed

16  operation of a tolling agreement. *Id.* at *10–11. Unlike in the instant case, the plaintiff in

17  *Universal Paragon Corp.* pointed to numerous affirmative misrepresentations concerning the

18  tolling agreement, including an "email from defense counsel confirming that the Tolling

19  Agreement was still in effect" after it had technically expired. *Id.* at *10. By contrast, the

20  *Universal Paragon Corp.* distinguished California state cases in which the plaintiffs had failed to

21  "allege any misrepresentations or promises" made by the defendant that a statute of limitations

22  defense would not apply. *Id.* at *11. As explained by the foregoing, in the instant case, Plaintiffs

23

24  _____

[3] Defendant argues that the two documents are barred by Federal Rule of Evidence 408. However,
because Plaintiffs seek to "negat[e] a contention of undue delay," Plaintiffs fall within an
25  exception contemplated by Rule 408. *See, e.g.*, *Bankcard Am., Inc. v. Universal Bancard Sys.,
Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) ("It would be an abuse of Rule 408 to allow one party
26  during compromise negotiations to lead his opponent to believe that he will not enforce applicable
time limitations and then object when the opponent attempts to prove the waiver of time
27  limitations.").

28  Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

here do not point to any misrepresentations or promises by Defendant that the California statute of limitations would not apply. On the contrary, the express language of the Tolling Agreement explicitly informed Plaintiffs that "this agreement [does not] waive or release any statute of limitations defense that could have been asserted before the date of the tolling period." Tolling Agreement.

Similarly, Plaintiffs cite *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56 (2017). *Wind Dancer* involved equitable estoppel of a contractual provision, not a statute of limitations. *Id.* at 79. Moreover, the plaintiffs in *Wind Dancer* pointed to a decades-long course of acts undertaken by the defendant that "caused the plaintiff to refrain from timely filing suit" and that rendered "the plaintiff's reliance on the defendant's conduct [] reasonable." *Id.* at 82. In fact, plaintiffs alleged that defendant affirmatively *prevented* the plaintiffs from meeting time limits specified in the operative contract, such as by engaging in dilatory tactics that made it impossible for plaintiffs to "satisfy the time limitations." *Id.* at 82–83. Plaintiffs in the instant case fail to point to any comparable conduct on the part of Defendant in the instant case.

In short, Plaintiffs fail to establish any genuine issue of material fact that Plaintiffs are entitled to equitable estoppel. Instead, the record indicates that Defendant's alleged conduct occurred after the applicable statute of limitations had run, that Defendant did not render Plaintiffs "ignorant" of "any true state of facts," and that Defendant did not act in a way that rendered Plaintiffs' conduct reasonable. The Court must therefore conclude that Plaintiffs cannot equitably estop Defendant from invoking the statute of limitations. The Court proceeds to consider Plaintiffs' argument that the Tolling Agreement revived Plaintiffs' untimely claims.

### C. The Tolling Agreement Did Not Revive Claims that Expired Under the California Statute of Limitations.

Next, Plaintiffs argue that the Tolling Agreement itself revived Plaintiffs' claims notwithstanding the fact that they were already untimely under California law. Opp'n at 11. Defendant responds that the plain language of the Tolling Agreement forecloses this reading. Reply at 5. The Court agrees with Defendant. The Tolling Agreement may not be read to revive

19

claims that had already expired under the California statute of limitations.

Plaintiffs' argument contains several steps. First, Plaintiffs claim that "the tolling agreement is silent on tolling of expired claims and in no way explicitly excludes expired claims." Opp'n at 11. In light of this purported silence, Plaintiffs argue that the Court must "ascertain the parties' intent," which, in the instant case, was that Plaintiffs "could enter into the tolling agreement and toll their claims whether expired or not." *Id.* at 12.

The problem with Plaintiffs' argument is clear: the Tolling Agreement is *not* in fact "silent on tolling of expired claims." Opp'n at 11. On the contrary, the Tolling Agreement specifically dictates that "this agreement [does not] waive or release any statute of limitations that could have been asserted before the date of the tolling period." Tolling Agreement. It is undisputed that the California statute of limitations expired as of January 13, 2014, before Jean Rustico became a party to the Tolling Agreement.[4] Thus, the Tolling Agreement did not "waive or release" Defendant's ability to invoke the California statute of limitations.

The very case that Plaintiffs cite on this point illustrates the foregoing straightforward logic. In particular, Plaintiffs point to *Delano v. Abbott Laboratories*, 908 F. Supp. 2d 888 (W.D. Tenn. 2012), an out-of-circuit district court decision that applied Tennessee state law to conclude that the scope of a tolling agreement might have extended to expired claims. *Id.* at 895. In *Delano*, the parties entered into a tolling agreement that was silent as to expired claims and, indeed, did "not limit the claims to which it applie[d]." *Id.*

Importantly, in light of the *Delano* parties' silence, the *Delano* court distinguished a different case, *O'Boyle v. Shulman*, No. 3:09-CV-169, 2010 WL 1408444 (E.D. Tenn. Apr. 4, 2010). In *O'Boyle*, the court examined a tolling agreement that expressly provided that "the parties agree not to waive any claims and defenses as of the date of the Agreement, and that the

---

[4] Defendant further argues that to the extent that John Rustico never entered into the Tolling Agreement to begin with, John Rustico's claims are untimely. Reply at 13. The Court need not reach this argument because, for the reasons outlined in this Order, the Tolling Agreement does nothing to render either of Plaintiffs' claims timely in any event.

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Agreement shall not be deemed to revive any claims that are already time-barred by the time of

2    the Agreement." *Id.* at \*1. Predictably, the *O'Boyle* court relied on this language to conclude that

3    the tolling agreement could "not be deemed to revive any claim that was already barred on the

4    date of the agreement." *Id.* at \*8.

5         The instant case mirrors *O'Boyle*, not *Delano*. Unlike the parties in *Delano*, the parties in

6    the instant case were not silent as to the treatment of expired claims. Instead, as in *O'Boyle*, the

7    parties in the instant case specifically agreed that the Tolling Agreement would not "waive or

8    release any statute of limitations defense that could have been asserted before the date of the

9    tolling period," Tolling Agreement, which means that the Tolling Agreement cannot "be deemed

10   to revive any claim that was already barred on the date of the agreement." *O'Boyle*, 2010 WL

11   1408444, at \*8.

12        Plaintiffs' sole response to the existence of the clear language in the Tolling Agreement is

13   tortured. Plaintiffs argue that the Tolling Agreement's operative language "only excluded claims

14   which were time-barred in jurisdictions where the particular claim arose." Opp'n at 12. The

15   Tolling Agreement is not remotely limited in this manner. The Tolling Agreement does not draw

16   any distinction between the statutes of limitations of different jurisdictions. Instead, the Tolling

17   Agreement's language is categorical, and the Tolling Agreement dictates that Defendant did not

18   "waive or release *any statute of limitations defense* that could have been asserted before the date of

19   the tolling period." Tolling Agreement (emphasis added). Further, the Tolling Agreement

20   explains that Defendant "will have *all* defenses available to it as it had on the first day of the

21   tolling period." *Id.* (emphasis added). The California statute of limitations expired before

22   Plaintiffs entered into the Tolling Agreement, and Defendant therefore undoubtedly could have

23   asserted the defense "before the date of the tolling period." Under California law, "if contractual

24   language is clear and explicit, it governs." *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th

25   377, 390 (2005) (internal quotation marks and citation omitted).

26        Accordingly, the Court concludes that the Tolling Agreement did not operate to revive

27

28   Case No. 18-CV-02213-LHK
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS'
     MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

Plaintiffs' claims, which had expired under California Code of Civil Procedure § 335.1 at the time Jean Rustico became a party to the Tolling Agreement. The Court proceeds to consider Plaintiffs' argument that the discovery rule and the doctrine of fraudulent concealment tolled the statute of limitations.

### D. Neither the Discovery Rule nor the Doctrine of Fraudulent Concealment Renders Plaintiffs' Claims Timely.

Finally, Plaintiffs argue that Plaintiffs' claims remain timely under two related California-law theories: the discovery rule and fraudulent concealment. Opp'n at 12–16. Defendant responds that neither theory is applicable because Plaintiffs were on notice of potential claims against Defendant from the date of the January 12, 2012 surgery. Reply at 8. Defendant also contends that Plaintiffs could have uncovered further suspected factual bases for Plaintiffs' claims had Plaintiffs conducted a reasonable inquiry. *Id.* The Court agrees with Defendant. Neither the discovery rule nor the fraudulent concealment doctrine saves Plaintiffs' claims from untimeliness.

The discovery rule and fraudulent concealment are "close cousin[s]" under California law, the Court therefore considers the two doctrines together. *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994). In the instant case, Defendant's ability to invoke *both* doctrines is foreclosed by the same fact: Plaintiffs were on inquiry notice of the instant claims as of January 12, 2012.

Under California law, as a general matter, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)). The discovery rule modifies this baseline in certain circumstances. Under the discovery rule, the accrual of a cause of action is delayed "until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 807. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111 (1988) (in bank). Instead, "[s]o long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.*

United States District Court
Northern District of California

Whether the discovery rule applies is a question of fact, but if "reasonable minds can draw only one conclusion from the proffered evidence," the application of the discovery rule becomes a question of law. *Pereira v. Dow Chem. Co.*, 129 Cal. App. 3d 865, 874 (1982). It is the burden of the plaintiff to "show a triable issue of fact under the discovery rule and the corollary rule of fraudulent concealment" when the applicable statute of limitations would otherwise bar the plaintiff's claims, as in the instant case. *Ornelas v. Yamaha Motor Corp.*, No. A104665, 2004 WL 2191324, at *3 (Cal. App. Sept. 30, 2004). "Since the investigation is not for the purpose of establishing sure knowledge of another's fault, but only a suspicion, the rendition of summary judgment in favor of defendants based on the one-year statute is more common than might initially be supposed." *Bristol-Myers Squibb Co. v. Superior Court*, 32 Cal. App. 4th 959, 964 (1995), *disapproved on other grounds by Fox*, 35 Cal. 4th at 814–15.

In the instant case, Plaintiffs were on inquiry notice of their claims on January 12, 2012, the date that Jean Rustico underwent the hysterectomy. Jean Rustico testified that on that same day, Dr. Clare Zhou ("Dr. Zhou"), the doctor who performed the hysterectomy, informed Jean Rustico that "there were complications from the robotic surgery during the surgery." ECF No. 43-1 Ex. D at 33:25–34:1. Dr. Zhou informed Jean Rustico that there had been damage done to Jean Rustico's aorta, and that the cause of the damage had been "the robotical [*sic*] equipment malfunctioning." *Id.* at 34:10–11. Specifically, Dr. Zhou told Jean Rustico that the *da Vinci* surgical system's "electrical component caus[ed] the damage." *Id.* at 36:11–12. Jean Rustico's husband, John Rustico, was present for the discussion. *Id.* at 34:19–20. Jean Rustico did not ask Dr. Zhou why the surgical complication had occurred. *Id.* at 41:2–4.

John Rustico testified that Dr. Zhou also separately explained to him that there had been "problems with the robot that led to Jean [Rustico]'s abdominal aorta being damaged," which had required Dr. Sarma's intervention. ECF No. 43-1 Ex. E at 21:2–3. John Rustico testified that Dr. Zhou had explained that there "was a burn that caused a hole in the aorta from malfunction of the robot." *Id.*

23

Plaintiffs concede that Plaintiffs were aware that the *da Vinci* surgical system was the robotic device that was used during Jean Rustico's surgery. Opp'n at 15; *cf. Eidson*, 40 F. Supp. 3d at 1218 (holding that plaintiff had plausibly alleged delayed accrual in part on the basis of plaintiff's lack of knowledge of the specific device used during surgery). Further, as the foregoing clearly demonstrates, on the date of the surgery, Plaintiffs were immediately made aware that Jean Rustico's injury was caused by "the robotical [*sic*] equipment malfunctioning," and that the *da Vinci* surgical system's "electrical component caus[ed] the damage." ECF No. 43-1 Ex. D at 33:25–34:1, 34:10–11. In light of the foregoing, the record requires the conclusion that Plaintiffs should have at least reasonably suspected the possibility of wrongdoing on the part of Defendant.

Plaintiffs fail to meet their burden to point to a genuine issue of material fact that would compel an alternative conclusion. First, Plaintiffs argue that "'[m]alfunction' is non-specific and does not suggest wrongdoing. That is, while it indicates something *went wrong*, it does not indicate *someone did something wrong*." Opp'n at 16. It is undoubtedly true that a malfunction is consistent with the possibility of a lack of wrongdoing. However, under the discovery rule, the facts need only raise the *suspicion* that a wrong was committed, not demonstrate with *certainty* that a wrong was committed. *Ornelas v. Yamaha Motor Corp.*, 2004 WL 2191324, is instructive on this subject. In *Ornelas*, the plaintiff suffered an accident caused by "an apparent malfunction of the throttle" of a motorcycle. *Id.* at *3. The plaintiff testified that the plaintiff believed the malfunction to have been caused by dirt that caused the throttle to stick. *Id.* at *4. The plaintiff therefore argued that "the existence of this innocent explanation for the throttle malfunction dispelled any reason to suspect that it was caused by [the defendant's] fault." *Id.* The California Court of Appeal rejected this argument, however. Instead, the California Court of Appeal held that while the malfunction "was obviously susceptible to more than one explanation," the possibility of multiple explanations would not "lead reasonable minds to reject other possible causes," such as wrongdoing. *Id.* at *4. Accordingly, the *Ornelas* court held that the discovery rule did not delay accrual of the statute of limitations.

United States District Court
Northern District of California

The instant case is clearer than *Ornelas* on this issue. In *Ornelas*, the plaintiff specifically testified as to an alternative possible cause of the malfunction, but the court nevertheless concluded that the plaintiff should have reasonably suspected wrongdoing by the manufacturer. *Id.* Here, Plaintiffs provide no evidence that Plaintiffs believed there to be any kind of alternative, innocent explanation for the *da Vinci* surgical system's malfunction. Opp'n at 16. Plaintiffs' assertion is therefore entirely conclusory and fails to generate a genuine issue of material fact.

Plaintiffs also assert that "a reasonable investigation would not have revealed evidence of the Tip Cover insulation defects because it was not until July 2013 that the FDA was able to recognize the problem and issue a Warning Letter to set forth [Defendant's] Tip Cover insulation defects." Opp'n at 16. As an initial matter, the Court notes that Plaintiffs misstate the discovery rule standard insofar as Plaintiffs suggest that the *specific facts* that underlie the instant claims must have been available to them. On the contrary, California law makes clear that "a plaintiff need not be aware of specific facts necessary to establish the claim, and that is a process contemplated by pretrial discovery." *MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 563 (2019) (internal quotation marks and citations omitted). The proper inquiry is whether "an investigation would have disclosed a *suspected* factual basis for a cause of action." *Zenga v. Greenberg Glusker Fields Claman & Machtinger*, No. B248318, 2014 WL 4746251, at *4 (Cal. Ct. App. Sept. 24, 2014).

The record clearly demonstrates that in the instant case, an investigation would have revealed a suspected factual basis for Plaintiffs' claims. First, Plaintiffs' FAC cites numerous published articles that predated Jean Rustico's surgery that criticized the tip covers and their insulation, and that raised the exact possibility of thermal injury such as the kind suffered by Jean Rustico. FAC ¶¶ 80–89. Indeed, Plaintiffs specifically summarize this literature to have shown "that the insulation [Defendant] had chosen to use on its electrosurgical instruments was insufficient to reliably prevent electricity from leaking into the body and causing internal burns to patients." *Id.* ¶ 79. This statement represents a concession that cannot now be ignored by

25

Plaintiffs. *See, e.g.*, *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").

The record also indicates that Dr. Zhou possessed further information that would have revealed a suspected factual basis for Plaintiffs' claims. Indeed, in a report that Dr. Zhou prepared on January 20, 2012, Dr. Zhou indicated that during the procedure on Jean Rustico, "the insulating sheath on the monopolar scissors malfunctioned and leaked electricity onto the atherosclerotic aorta." ECF No. 48-1 Ex. 16 at ECF 231. In the days following the surgery, Dr. Zhou also informed an Intuitive employee that during the procedure, "she was seeing arching [*sic*] throughout the case, replaced the tip cover 3 times and it didnt [*sic*] fix the issue." *Id.* at ECF 223. Dr. Zhou testified that at some point after the surgery, Dr. Zhou "asked [Defendant], you know, are they going to make improvements to prevent this, and [Dr. Zhou] was under the understanding that something was going to be coming out." ECF 48-1 Ex. 13 at 56:8–10. As discussed in the foregoing, Plaintiffs never questioned Dr. Zhou about the surgical complication. *E.g.*, ECF No. 43-1 Ex. D at 41:2–4. However, a reasonable investigation would have revealed Dr. Zhou's concerns, which would have certainly provided Plaintiffs with a suspected factual basis for their claims against Defendant.

Accordingly, the Court concludes that Plaintiffs were on inquiry notice of the instant claims as of January 12, 2012, the date of Jean Rustico's surgery. Plaintiffs have not met their burden to demonstrate a genuine issue of material fact that the discovery rule delayed the accrual of the claims. Moreover, for the same reasons, Plaintiffs may not invoke the doctrine of fraudulent concealment. California courts have repeatedly held that "the doctrine of fraudulent concealment for tolling the statute of limitation does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *MGA Entm't, Inc.*, 41 Cal. App. 5th at 561 (internal quotation marks omitted). As discussed, Plaintiffs were on notice of the potential claims against Defendant as of January 12, 2012. The

doctrine of fraudulent concealment therefore "does not come into play" to delay the accrual of the statute of limitations. *Id.* The Court concludes that neither the discovery rule nor the doctrine of fraudulent concealment may render Plaintiffs' claims timely.

In sum, the Court has concluded that the two-year California statute of limitations outlined by California Code of Civil Procedure § 335.1 governs Plaintiffs' claims. Plaintiffs' claims were therefore untimely as of January 13, 2014. The Court has concluded that the doctrine of equitable estoppel does not apply, that the Tolling Agreement did not revive Plaintiffs' untimely claims, and that neither the discovery rule nor the doctrine of fraudulent concealment render Plaintiffs' claims timely. Accordingly, the Court must GRANT Defendant's motion for summary judgment on the basis that Plaintiffs' claims are barred by the statute of limitations. Further, because Plaintiffs' claims are untimely, the Court must DENY Plaintiffs' motion for partial summary judgment. *See, e.g.*, *Lazar v. Energy Unlimited, Inc.*, No. CV 07-00887 SGL (JCRx), 2009 WL 10673759, at *5 (C.D. Cal. Mar. 30, 2009) (denying motion for partial summary judgment upon concluding that claims were untimely).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment. The Court DENIES Plaintiffs' motion for partial summary judgment.

**IT IS SO ORDERED.**


Dated: December 19, 2019

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-02213-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT